## MacFarland Appeal

*Haws & Burke*, for appellant.

*Edward J. Ozorowski*, for Secretary of Revenue.

GROSHENS, J., May 1, 1959.—On April 8, 1958, Eleanor MacFarland, appellant, was arrested on the charge of unlawfully operating a motor vehicle at the intersection of Welsh Road and DeKalb Pike in the Township of Montgomery. The justice of the peace mailed the usual information and notice of hearing to appellant's home. Appellant's mother, without the authorization of appellant, sent her check for $15 to the justice of the peace in payment of fine and costs.

The Secretary of Revenue, under the schedule of penalties, treated the arrest of April 8, 1958, as a "second offense" (appellant having been arrested in 1955 for speeding) and thereby imposed the 15-day suspension provided in the said schedule.

As a result of the arrest for speeding in 1955, the Secretary of Revenue had suspended appellant's operating privileges for a period of 15 days. Subsequently, an appeal was taken from the 1955 suspension to this court. The appeal was sustained, and the license was then restored to appellant.

Appellant now contends that the scheduled penalty for the "second offense" was in error for two reasons: First, because the sustained appeal taken as a result of the arrest in 1955 vitiates the arrest record, giving no basis for the Secretary of Revenue's present "second offense" penalty; and, second, the arrest of April 8, 1958, was improper because the testimony does not

disclose the unlawful act charged by the arresting officer and, therefore, does not constitute a "second offense."

With appellant's first contention, we do not agree. With her second contention, we do agree.

The information alleged a violation of subsection (c) of section 1008 of The Vehicle Code of May 1, 1929, P. L. 905, art. X, sec. 1008(c), as amended, 75 PS §543(c), which reads as follows:

"(c) The driver of a vehicle shall not overtake or pass any other vehicle, proceeding in the same direction, at any railway grade crossing, nor at any intersection of highways, *unless such intersection or crossing is controlled by traffic* signal, or unless permitted so to do by a watchman or peace officer, except, on a highway having two (2) or more lanes for movement of traffic in one direction, the driver of a vehicle may overtake or pass another vehicle: . . ." (Italics supplied.)

The intersection of the Welsh Road and DeKalb Pike was admittedly controlled by a traffic signal at the time of the alleged violation on April 8, 1958. Appellant was proceeding north on DeKalb Pike, a two lane highway: one lane north and one lane south. The traffic light showed "green" for DeKalb Pike vehicles. Appellant overtook and passed a northbound vehicle in the intersection.

The Commonwealth cites Houlihan v. Turkheimer, 146 Pa. Superior Ct. 496 (1941), and Commonwealth v. Gugliotta, 181 Pa. Superior Ct. 181 (1956), and contends that it is the legislative intention, as expressed in the language of section 1008(c), to prohibit passing at an intersection except, inter alia, where the highway has two or more lanes for movement of traffic in one direction, and to permit overtaking and passing at an intersection only on a highway having two or more lanes available at all times for movement

of traffic in one direction. We do not agree with this contention.

The qualifications on the limitations on the privilege of overtaking and passing in (c), "unless such intersection or crossing is controlled by traffic signal," is clear, direct, unequivocal and unambiguous.

The cases cited by the Commonwealth did not involve intersections controlled by traffic signal. In the Turkheimer case, page 498, President Judge Keller wrote:

"The purpose of this provision is to prevent the likelihood or possibility of the overtaking vehicle running into a vehicle in the line ahead of him turning into the intersecting street, or into a vehicle on the intersecting street waiting or about to cross or turn into the line of traffic."

This quotation indicates that traffic on the intersecting street was not controlled by a traffic signal. In the Gugliotta case, a traffic signal is not mentioned. Hence, it is safe to assume that the qualification, "unless such intersection or crossing is controlled by traffic signal," was not before the Superior Court in either case as a fact.

It is doubtful whether an administrative officer, invested by statute with discretion to impose penalties, may set up a schedule of penalties in the absence of clear legislative authorization to do so. A predetermined "short order" penalty based on the number of "offenses" may have certain practical advantages, but the schedule of penalties is devoid of the ingredient discretion, which is essential to the exercise of the power to punish under our principles of justice. Under the circumstances of this case, we feel justified in going behind the record of the "second offense" to inquire into the legal merits of the charge made by the police officer against appellant.

### Order

And now, May 1, 1959, the suspension of the motor vehicle operator's license of Eleanor MacFarland is set aside, and the Secretary of Revenue is directed to restore the said license to the said Eleanor MacFarland.